**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Hobby Lobby Stores, Inc. | : |
| | : |
|     Plaintiff | : |
| | : |
| v. | :   Civil Action No |
| Host Master, | : |
| Transure Enterprises, Ltd | : |
|     And | : |
| Hobbylibby.com | : |
| | : |
|     Defendants | : |

**COMPLAINT**

Plaintiff, Hobby Lobby Stores, Inc., by and through its attorneys, Salmon, Ricchezza, Singer & Turchi, LLP files its Complaint against Host Master, Transure Enterprises, Ltd and the domain name hobbylibby.com for injunctive relief and damages as follows:

**NATURE OF THE SUIT**

1. This is an *in rem* action against the defendant domain name hobbylibby.com for cybersquatting under the Federal Anti-Cybersquatting Consumer Protection Act, 15 U.S.D. §1125(d) and an *in personam* action against Host Master and Transure Enterprises, Ltd. for trademark infringement under the Lanham Act, 15 U.S.C. §1114(1)(A).

2. The basis for the claims set forth herein is the defendants' "typo-squatting," which is the registration or use of a domain name that represents a typographical error of the legitimate site, and which may display advertisements related to the legitimate site but will distribute computer viruses or "malware," collect visitor's personal information for inappropriate or illegal uses or to send "business impersonation" emails.

3.	Another purpose of "typo-squatting" is to register a domain name that represents a typographical error of the legitimate site primarily for the purpose of selling, renting, or otherwise transferring the domain name registration to complainant who is the owner of the trademark or service mark or to a competitor of that complainant, for valuable consideration in excess of respondent's documented out of pocket costs directly related to the domain name;

4.	Typo-squatting harms consumers by causing confusion with the legitimate sites being sought by the consumers and very often results in consumer's computers being infected with computer viruses, "bloatware" or other unwanted software, consumer's personal information being collected and misused, and/or consumers being presented with an endless stream of unwanted advertisements.

5.	In the present case, Hobby Lobby's invaluable rights in the distinctive mark Hobbylobby.com has been deliberately infringed through the bad faith registration, use, and/or trafficking of the Defendant Host Masters and/or Transure Enterprises, Ltd. ("Transure") of the confusingly similar domain hobbylibby.com.

**PARTIES**

6.	Hobby Lobby is a corporation organized and existing under the laws of Oklahoma with a place of business at 7707 SW 44th Street, Oklahoma City, OK 73179.

7.	Hobby Lobby is one of the largest retailers in the United States with retail stores in 48 states. Hobby Lobby also sells its products online via its website hobbylobby.com. Consumers associate the name "hobbylobby.com" with Hobby Lobby.

8.	Defendant Host Master, individually or doing business as Transure is a Delaware corporation with a place of business at 1000 N. West Street, Suite 1200, Wilmington, Delaware 19801. On information and belief, the registered address of Transure Enterprises is a share space

facility only. On information and belief, Transure Enterprises has no employees, assets, records or business facilities at the registered address.

9. Defendant registered the domain name Hobbylibby.com, which is identical to Hobbylobby.com except that the "o" in "lobby" is replaced with an "i" in the "hobbylibby.com' domain. "Libby" is not a word.

10. According to WhoIs registration data, Hobbylibby.com is registered to Above.com Pty Ltd.

## JURISDICTION AND VENUE

11. This is a civil action for federal cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.D. §1125(d), and for trademark infringement under the Lanham Act, 15 U.S.C. §1114(1)(A).

12. This Court has original jurisdiction under 15 U.S.C.§1121(a) and 28 U.S.C. §§ 1331 and 1338(a).

13. This Court has *in rem* jurisdiction over the Defendant pursuant to 15 U.S.C. § 1125(d)(2)(A) and over the defendant domain name hobbylibby.com. *In rem* jurisdiction is appropriate under 15 U.S.C. § 1125(D)(2)(a)(ii) because there is either no registrant field in the WhoIs record for the Defendant or where there is a registrant field, that field reflects a privacy service, a fictitious person/entity and/or an individual residing outside the United States and therefore Hobby Lobby cannot secure *in personam* jurisdiction over a person who would have been a defendant in a civil action under 15 U.S.C. 1125(d)(1)(A) and/or because Hobby Lobby, despite its reasonable due diligence, has been unable to find a person who could be a defendant in a civil action under 15 U.S.C. §§1125(d)(1)(A).

14. Defendants created the domain name hobbylibby.com on January 3, 2009. The WhoIs information pertaining to this website is attached as Exhibit "A." Defendants' continued use of the hobbylibby.com website infringes Plaintiff's registered trademarks.

15. Hobby Lobby has given notice of the violations of its rights and its intent to proceed *in rem* to the contact addresses set forth in the registration record for the domain name.

16. Venue is proper in this District pursuant to 15 U.S.C. §1125(d)(2)(c) in that the Defendant Host Master d/b/a Transure has a place of business in this District and the defendant Hobbylibby.com is a .com domain name.

17. Joinder of the Defendant Hobbylibby.com is proper under Fed. R. Civ. P. 20(a)(2) and or Fed. R. Civ. P 21 in that the *in rem* cybersquatting and trademark infringement claims set forth herein arise from the same transactions and present questions of law that are common to all defendants.

## HOBBY LOBBY'S RIGHTS

18. Prior to January 3, 2009, Hobby Lobby owned all trademarks pertaining to the name "Hobby Lobby." Hobby Lobby has owned many of these trademarks since August 3, 1972.

19. Hobby Lobby's trademarks were readily searchable on the United States Patent and Trademark Office website before Defendants created hobbylibby.com. Because Hobby Lobby's right to the exclusive use of the name "Hobby Lobby" vested long before Defendants' creation of hobbylibby.com, Defendants have no rights or legitimate interest to hobbylibby.com.

20. Since Hobby Lobby's trademark for "Hobby Lobby" were registered long before Defendants' creation of hobbylibby.com, Hobby Lobby has the exclusive right to use the name "Hobby Lobby."

21. Hobby Lobby has continuously used the mark Hobby Lobby to promote its goods and services since 1972.

22. Hobby Lobby has expended significant time, money and effort in promoting and marketing its goods and services offered and sold under the Hobby Lobby mark through substantial and ongoing business activities across the United States.

23. Consumers have come to distinguish and recognize the legitimacy of Hobby Lobby's retail stores and website as a result of the use and widespread promotion of the Hobby Lobby mark.

24. Given Hobby Lobby's stellar nationwide reputation as a seller of quality goods, and the widespread recognition of the Hobby Lobby mark, malicious third parties attempt to misuse the Hobby Lobby mark to confuse, mislead and/or deceive consumers.

25. To protect both its consumers and the value of its mark, Hobby Lobby has engaged in consistent and significant enforcement efforts to shut down scams and schemes using the Hobby Lobby mark without authorization. Its efforts include registration of its domain name hobbylobby.com, trade mark civil actions, including cybersquatting actions, administrative proceedings under the Uniform Domain Name Dispute Resolution Policy, use of domain policing and trademark monitoring platforms. Hobby Lobby also sends take-down demand notices to violators.

26. Based on Hobby Lobby's extensive use and promotion of the Hobby Lobby mark for several decades, and the recognition and goodwill the mark has achieved in the eyes of the consuming public, the Hobby Lobby mark is distinctive and/or famous and is entitled to broad trademark rights under both statutory and common law.

27. The defendant domain name hobbylibby.com represents an unauthorized colorable imitation of the Hobby Lobby mark, which itself further demonstrates that the Hobby Lobby mark has acquired distinctiveness and was famous and/or distinctive prior to the registration of the hobbylibby.com domain name.

28. In addition to common law trademark rights, Hobby Lobby owns several trademarks registered with the United States Patent and Trademark Office, including the trademark Hobby Lobby. See, Registration No. 2,866,317, Registration No. 3,068,117 and 4,280,022, attached hereto as Exhibits "B," "C," and "D."

29. Registration No. 2,866,317 was registered on July 27, 2004 for "Retail store services in the field of arts and crafts."

30. Registration No. 3,068,117 was registered on March 14, 2006 for "Retail store services featuring artificial flowers, artificial plants, baskets, candles, cards, ceramics, fabrics, framed art, furniture, garden décor, glassware, holiday merchandise, home accents, jewelry, metalware, needle art, party supplies, photo frames, picture frames, potpourri, pottery, seasonal merchandise, sewing notions, silk flowers, and wearable art."

31. Registration No. 4,280,022 was registered on January 22, 2013 for "Online retail store services featuring a wide variety of consumer goods of others."

32. These registrations are *prima facie* evidence of the validity of the marks, Hobby Lobby's ownership of the marks and Hobby Lobby's exclusive right to use the marks in commerce in the United States.

33. Hobby Lobby has established incontestable status by of these marks by their continuous use for no less than five (5) consecutive years since their registrations, the marks are not subject to any legal challenge and are not generic. Hobby Lobby has filed and maintained

Affidavits of Use to establish the incontestable status of the marks.  The Continuous Use Affidavits are attached hereto as Exhibits "D," "E" and "F."

34.	The incontestable status of the marks is conclusive evidence of the validity of the mark, of Hobby Lobby's ownership of the mark and of Hobby Lobby's exclusive right to use the mark in commerce in the United States.

35.	The defendant domain name hobbylibby.com reflects a potential typographical error of the Hobbylobby.com domain name.  The defendant domain name does not include any elements that are distinctive or descriptive.

36.	Upon information and believe, the defendant domain name was registered for the purpose of, *inter alia¸* obtaining Internet visitors when such visitors were attempting to reach Hobby Lobby's actual website, Hobbylobby.com.

37.	The defendant domain name Hobbylibby.com was configured for the improper purpose of misdirecting unsuspecting users to an undesirable site.

38.	Upon information and belief, the registrant of the defendant domain name hobbylibby.com has not engaged in any bona fide noncommercial or fair use of the Hobby Lobby marks.

39.	Upon information and belief, the registrant's registration of the defendant domain name was made primarily for the purpose of selling, renting, or otherwise transferring the domain name to Hobby Lobby for valuable consideration in excess of defendant's actual costs directly related to the domain name.

40.	The fact that "libby" is not a word, recognized mark or arbitrary designation is evidence that the only reason defendants registered hobbylibby.com was to sell the domain name registration to Hobby Lobby or a competitor of Hobby Lobby.

**COUNT I**

**VIOLATION OF THE FEDERAL ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT**

41. The allegations set forth herein are incorporated by reference.

42. The Hobby Lobby marks are famous and/or distinctive and were famous and/or distinctive prior to the time of registration of the defendant domain name hobbylibby.com.

43. The actions of the registrant of the defendant domain name hobbylibby.com constitutes registration, maintenance, trafficking in and/or use of a domain name that is confusingly similar to the Hobby Lobby marks with the bad faith intent to profit therefrom.

44. In light of the concealment of the identities of the true owners of the defendant domain name and/or the registrant's location outside of the United States, Hobby Lobby is not able to obtain *in personam* jurisdiction over the registrant of the defendant domain name or any other person who would have been named as a defendant in a civil action under 15 U.S.C. §1125(d)(1) or, in the alternative, Hobby Lobby, despite due diligence, has been unable to find a person who would have been named as a defendant in a civil action under 15 U.S.C. §1125(d)(1)(A).

45. The aforesaid acts of the registrant of the defendant domain name hobbylibby.com constitutes unlawful cyberpiracy in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. §1125(d)(1).

46. The aforesaid acts have caused and continue to cause irreparable harm to Hobby Lobby and to the consuming public. The harm to the public includes the potential for fraud stemming from the use of defendant domain name hobbylibby.com that is intended to mislead consumers into assuming an association with Hobby Lobby that is false.

47. The harm to Hobby Lobby includes the damage to its reputation and the goodwill associated with the Hobby Lobby name and marks.

48. Money cannot adequately compensate Hobby Lobby for the harm it has suffered and he irreparable harm it will continue. As such, the permanent restraint and enjoinment by this Court of the continuing registration and use of the hobbylibby.com domain name is warranted.

49. Pursuant to 15 U.S.C. §1125(d)(2)(D)(i), Hobby Lobby is entitled to an order directing the current registrars of the defendant domain name hobbylibby.com be changed to Hobby Lobby's registrar of choice and directing the registrant to be changed to Hobby Lobby.

## COUNT II
### *IN REM* TRADEMARK INFRINGEMENT

50. The allegations set forth herein are incorporated by reference.

51. At the time the defendant domain name hobbylibby.com was registered and/or used, Hobby Lobby possessed valid federal trademark rights in the Hobby Lobby marks.

52. In light of the registrants' concealment of the identities of the true owners of the defendant domain name hobbylibby.com and/or the registrants' location outside of the United States, Hobby Lobby is not able to obtain *in personam* jurisdiction over the registrant of the defendant domain name hobbylibby.com or any other person who would have been a defendant in a civil action under 15 U.S.C. §1125(d)(1)(A) or, alternatively, Hobby Lobby, despite its due diligenc4e, has been unable to find a person or entity who would have been named as a defendant in an action under 15 U.S.C. §1125(d)(1)(A).

53. The registration and/or use of the defendant domain name hobbylibby.com us a use in commerce.

54. The registration and/or use of the defendant domain name hobbylibby.com has adversely affected Hobby Lobby's ability to use its Hobby Lobby marks in commerce.

55. The defendant domain name hobbylibby.com and its registrant have no valid rights in the Hobby Lobby marks.

56. At the time the defendant domain name hobbylibby.com was registered and/or used, the defendant domain name hobbylibby.com and its registrant were on actual and/or constructing notice, pursuant to Section 22 of the Lanham Act, 15 U.S.C. § 1072, of the existence of Hobby Lobby's superior rights in the Hobby Lobby marks by reason of the existence at that time of Hobby Lobby's federal trademark rights.

57. Use by the defendant domain name hobbylibby and its registrant of the Hobby Lobby marks is without the permission or authorization of Hobby Lobby.

58. The aforesaid registration and/or use of the defendant domain name hobbylibby.com has caused and is likely to continue to cause confusion, mistake and/or deception among consumers and the public.

59. The aforesaid registration and/or use of the defendant domain name hobbylibby.com constitutes direct infringement of Hobby Lobby's trademark rights in violation of Section 32(1) of the Lanham Act, 15 U.S.C. §1114(1).

60. The aforesaid acts have caused and are continuing to cause grave and irreparable harm to Hobby Lobby and to the public. Unless permanently restrained and enjoined by this Court, such irreparable harm will continue.

WHEREFORE, for all of the foregoing reasons, Hobby Lobby respectfully requests that this Court enter judgment in its favor on the claims of cybersquatting and trademark infringement, that this Court order the domain registries for the defendant domain name hobbylibby.com to change the registrar to Hobby Lobby's registrar of choice and by such

registrar's change of the registrant to Hobby Lobby, and for such other further relief as this Court deems just and proper.

                                                  SALMON, RICCHEZZA, SINGER & TURCHI, LLP

                                                  By: */s/ Sally J. Daugherty*
                                                  Sally J. Daugherty, Esquire (Atty ID No. 5473)
                                                  222 Delaware Ave
                                                  Suite 1100
                                                  Wilmington, DE 19801
                                                  (302) 322-1032
                                                  (302) 665-4291 (fax)
                                                  (610) 608-9471 (cell)
                                                  Sdaugherty@srstlaw.com

Dated: April 8, 2025